## STATEMENT OF FACTS

On August 12, 2024, at approximately 4:31 p.m., Officers of the Third District Crime Suppression Team (CST) were conducting routine patrols in the 1700 block of 7th Street, NW, Washington, D.C. All officers were wearing full Metropolitan Police Department (MPD) uniforms and were equipped with activated body worn cameras. Additionally, the officers were all operating department-issued police vehicles.

Members observed a gray Hyundai Accent bearing District of Columbia tags "JD3637" driving in traffic southbound in the 1900 block of 7th Street, NW, Washington D.C. 20001. The Hyundai then crossed over to the "Bus Only" and passed multiple vehicles while the Hyundai illegally drove in the "Bus Only" lane. A traffic stop was conducted on the gray Hyundai Accent in the 1700 block of 7th Street, NW.

During the stop, officers made contact with the driver, who was later identified as Terry Ferguson, and was the sole occupant of the gray Hyundai Accent. Mr. Ferguson did not immediately roll down the windows of the Hyundai, which prevented Sergeant Vullo from seeing inside of the Hyundai due to the heavy window tint. Sergeant Vullo waved to the driver's side window, to which Mr. Ferguson rolled the window halfway down. Mr. Ferguson was unable to produce his driver's license when Sergeant Vullo asked for it, but was able to provide a picture of his driver's license on his cell phone. While Sergeant Vullo continued to interview Mr. Ferguson, he was able to smell a strong, chemical odor emanating from inside of the driver's side window of the Hyundai.

Additional CST officers approached the Hyundai to assist Sergeant Vullo with the traffic stop. It should be noted that multiple other CST officers besides Sergeant Vullo smelled a strong, chemical odor emanating from inside of the open driver's side window and open passenger side window of the Hyundai. Based on officers' experience, the strong, chemical odor was consistent with the smell produced by Phencycylidine (PCP). Officers observed multiple loose disposable gloves strewn throughout the Hyundai. Based on officers' experience, disposable gloves are often used when handling PCP due to the danger of absorbing PCP through one's skin.

Defendant Ferguson was stepped out of the Hyundai. A probable cause search of the Hyundai was conducted based on the strong, chemical odor of suspected PCP that officers smelled emanating from the Hyundai's open windows.

The probable cause search of the Hyundai yielded the recovery of a black satchel located on the front passenger floorboard in front of the front passenger seat. Inside of the black satchel was a black handgun. Upon further inspection, the handgun was:

1

- Make: Glock
- Model: 17 (Gen 4)
- Color: Black
- Caliber: 9mm
- Serial Number: Obliterated on lower receiver; "L153941" on barrel
- Ammunition: Thirty-two (32) total rounds of ammunition. One (1) round was recovered from the chamber of the handgun and thirty-one (31) rounds were recovered from the thirty-one (31) round capacity magazine, which was inserted into the magazine well of the handgun.
- One (1) round recovered from inside of the magazine was a .40 S&W round, while the other thirty (30) rounds were 9mm.
- Miscellaneous Attachments: Holosun red dot sight (Serial #: MGO16190), threaded barrel, blue handle grip

Officers queried the D.C. Gun Registry, which revealed that Defendant Ferguson did not possess a valid D.C. carry permit at the time of his stop, nor was the recovered handgun registered in the District of Columbia at the time of his stop.

Also seized from the Hyundai was a black bag that was located on the rear passenger side floorboard behind the front passenger seat. Inside of the black bag was the following property:

- Twenty-one (21) small clear vials all containing an amber liquid – suspected PCP
- One (1) half-ounce clear vial containing an amber liquid (less than half full) – suspected PCP
- One-hundred thirty-one (131) yellow capsules all containing a white, rock-like substance (a small portion was field tested and yielded a positive color change for the presence of cocaine) – suspected cocaine base
- Plastic bag containing a white, powdery substance (weighed approximately 0.22 grams to include original packaging) – suspected cocaine HCL
- Plastic bag containing a white, rock-like substance (weighed approximately 5 grams to include original packaging) – suspected cocaine base
- Plastic bag containing a white, rock-like substance (weighed approximately 7 grams to include original packaging) – suspected cocaine base
- Plastic bag containing a white, rock-like substance (weighed approximately 8 grams to include original packaging) – suspected cocaine base
- Plastic bag containing a white, rock-like substance (weighed approximately 62 grams to include original packaging) – suspected cocaine base
- Mail matter addressed to "Terry Tyrone Ferguson"
- Visa card under the name "Terry Ferguson"
- Yellow scale

Additionally, a red scale and a box of disposable nitrile gloves were located on the rear seat of the Hyundai.

2

According to the Washington D.C. Drug Trends/Pricing Chart of 2020, Sixty-Two (62) grams of crack (base) cocaine is worth approximately $2,200-$3,200 and can net up to $8,850.00 in street profits. Seven (7) grams or "¼ Ounce" of crack (base) cocaine is worth approximately $250-$440 and can net up to $800.00 in street profits. Fourteen (14) grams of crack (base) cocaine or "½ Ounce" is worth approximately $550-$650 and can net up to $1,600.00 in street profits.

The total amount of suspected crack (base) cocaine packaged in plastic bags weighed cumulatively approximately 82 grams. Based on the Washington D.C. Drug Trends/Pricing Chart of 2020, officers estimated that Mr. Ferguson had approximately $3,000-$4,290 worth of crack (base) cocaine, which could net up to $11,250.00 in street profits.

The one-hundred thirty-one capsules containing suspected cocaine base are estimated to be approximately 100 milligrams each. According to the Washington D.C. Drug Trends/Pricing Chart of 2020, 80-150 milligrams of crack (base) cocaine or a "Twenty Bag/Dub" is worth approximately $20.00 and is normally sold for personal use amounts. The one-hundred thirty-one (131) capsules are estimated to be worth approximately $2,620.

The white, powdery substance weighed approximately 0.22 grams (220 milligrams). According to the Washington D.C. Drug Trends/Pricing Chart of 2020, 80-150 milligrams of powder (HCL) cocaine or a "Twenty Bag/Dub" is worth approximately $20 and is normally sold for personal use amounts.

According to the Washington D.C. Drug Trends/Pricing Chart of 2020, a one (1) milliliter bottle of PCP is worth approximately $35-$50 and can net approximately $40-$80 worth of street profits. Similarly, a full ½ ounce bottle (15 ml) is worth approximately $125-$200 and can net approximately $400-$600 worth of street profits. Mr. Ferguson had twenty-one (21) vials of suspected PCP that were estimated to be filled with approximately one milliliter each, as well as the ½ ounce bottle (15 ml) that was less than half full. Based on the Washington D.C. Drug Trends/Pricing Chart of 2020, officers estimated that Mr. Ferguson had approximately $860-$1,250 worth of PCP, which could net $1,240-$2,280 in street profits.

During a search incident to arrest, $111 currency was seized from Defendant Ferguson's front right pant pocket. The multiple small bills that were seized are consistent with receiving money from the sale of illegal narcotics.

Due to the following facts, the possession of the suspected narcotics seized is more consistent with possession with the intent to distribute than mere possession: the large quantities of narcotics seized; the packaging of the seized narcotics; the presence of the $111 seized from Defendant Ferguson; the two (2) scales seized; the presence of the box of disposable nitrile gloves that were seized; and the lack of any instruments for consumption of the seized narcotics.

Mr. Ferguson was identified by a photo of his identification card on his phone as Terry Tyrone Ferguson. He was subsequently placed under arrest. Mr. Ferguson was issued a notice of infraction (NOI) for unauthorized driving in a bus lane (NOI # 293341366).

There are no firearm or ammunition manufacturers in the District of Columbia. Therefore, the firearm and ammunition in this case necessarily traveled in interstate commerce in order to reach Ferguson.

Mr. Ferguson has a prior criminal felony conviction punishable by a term of incarceration greater than one year. On October 20, 2000, the defendant was convicted of Second-Degree Murder, two counts of Using or Displaying a Firearm, and Malicious Wounding in Prince William County, Virginia in case number CR05047372-00 and sentenced to 23 years' confinement on each count. As a result, Ferguson was aware at the time of his arrest that he had a prior conviction for a crime punishable by more than one year.

Based on the foregoing, your affiant submits that there is probable cause to believe that August 12, 2024, the defendant violated 18 U.S.C. § 922(g), which makes it a crime for a convicted felon to possess a firearm; 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(C), which make it a crime to possess, with the intent to distribute a substance containing a detectable amount of PCP; and 18 U.S.C. § 924(c)(1)(A)(i), which makes it a crime to use, carry, and possess a firearm during, in relation to, and in furtherance of a drug trafficking offense.

_____
Special Agent Marshal Chris Perzanoski
Bureau of Alcohol, Tobacco, and Firearms

*Attested to by the applicant by telephone in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 15th day of August, 2024.*

_____
HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE